Police, the court, counsel, again my name is Greg Sylvia and I represent Tyler Nichol and no candor I have never had a worse case to prepare for we're describing this as the trying to hit the moving target case so I am going to talk about what I think is important tell me if it's not as I as I see it today at 10 o'clock I suppose an order a case could have issued a few minutes ago but amylene is the law of the Ninth Circuit right now amylene requires a remand in this case it was the jury verdict had no amounts drug quantities were contested judicial fact-finding took my client's sentence from 0 to 6 months to 121 months and similar things for for the codefendants as I understand it amylene and bonk petition the petition briefing was done as of Friday I don't know and again it's not granted so again amylene still controls mr. Stiles has suggested and I assume will continue to suggest that we just wait until see what happens I will suggest otherwise here at some length unless somebody thinks that's not a good idea well amylene has not the dust hasn't yet settled on the in bank petition right those issues so they're up in the air and I guess that's all I can say okay so I vote well again I won't belabor that I think assuming amylene is good law this one is you know this isn't the truly exceptional case that doesn't go back and I won't belabor that I think we all hit it in the supplemental briefing if the in bank petition is granted then I still don't see that as a problem unless and until there is an order that comes out that says thou shall not remand any case until this is settled I think we can because if amylene remains good the way it is we should go back if there's a change we don't know that it's necessarily going to be bad here there were a lot of things going on in amylene I mean we have I mean basically the of course the government is dealing with the plane air I'm shorthanding it is we have the good plane air the easy plane air test in the hard plane air test and I of course like the easy one and but that's only one thing going on and I mean the other things going on where this what's the easy one yeah that's the one where I win right right that's what I'm saying under amylene this would be this case would go back particularly two of the three of us might get my client and mr. Gatewoods were sentenced at the bottom of the range miss Hampton's client was was sentenced in the middle but it's going to be one of those records where you know the district judge wasn't saying that I had discretion I would have done this or that so we fall into that category and again the easy test or the one that I like under amylene I guess the silence of the district court and we're on the knife edge of silence and you fall towards the defendant versus say the 11th and in First Circuit although it or there's some rumblings that that isn't like as well so again if amylene stick has if the good plane air test continues we should go back amylene not withstanding if if one says look the problem is whatever else happened the certainly didn't know what the rules were at the time or if if you should have known because we all know the laws has never changed it's always been the same that's as a matter of important jurisprudential concepts so the poor district judge just didn't know what the law really was so he fouled up never mind constitutions he just fouled up he thought he had to do this without exercising his discretion he had discretion so we should go back amylene or no amylene that's what you would say yes and and I will go I'll give you now I'll go farther than that I believe that the second Booker holding I mean we have the Sixth Amendment Blakeley thing then we have the second remedial interpretation of the guidelines that is not statutory error that is constitutional error it's Fifth Amendment due process and given the I I know this is I guess I'm one of the few people on the soapbox but I'll I guess explain why and it is not just well I get there two ways the first is would be Oklahoma v Hicks or fairly obscure but still good law and that is where under Oklahoma law the jury had to sentence the habitual offender to 40 years the state Supreme Court struck that down and the state Supreme Court said well your sentence was within the 40 years is within what you could have gotten no harm no foul the United States Supreme Court held that that is not just state statutory analysis when the sentencing body sentences believing they have to give a mandatory sentence instead of using their discretion that is a due process constitutional violation why do I care I'm sorry what why do I care the Constitution is Marshall told us it's just a great big statute and we just say when one statute says one thing and one says the other we look at the most important statute but if both statutes say you got to do it way X do I care if it's constitutional or just a really stupid statutory decision I don't and if so why here's why you care here's why I care and it gets into standards of review if you like what I'm saying and think that mr. Nichols goes back because the Honorable Judge Lodge thought he had to impose a sentence when he didn't I don't care what you think it is if you are if it's getting down to the point of is it constitutional error or not starts depending on standards of review and what I have to show then it really matters because the reason I got to like Barnett in the 10th circuit both of those circuits have found this secondary error they're not discussing what the basis of it is they're using plain air test again in there so if we're back to what is the plain air test you know Barnett says again silence we fall to the defendant's side but if we so but I don't I don't think we even get to plain air in this for a few reasons number one is when you actually examine what is about the last two lines of the remedial opinion of Booker we have Justice Breyer talking about and the Sixth Amendment error and not every case will require a resentencing because you know with the concerns of flight might fail to plain air test then period next sentence and in cases where there are no Sixth Amendment violations whether or not a resentencing is required or not or I'm sorry whether or not resentencing is required or if we may merely review for reasonableness depends on harmless air so we have the Supreme Court talking about a preserved error standard on the second Booker error that did not that didn't exist until January 12th so I see the Supreme Court is kind of dividing it up into you deal with plain air on the Sixth Amendment and then we just kind of harmless and that that's kind of that's how I get to that standard of review for for what I'm calling the Booker the Booker error I I admit I am reading a lot into the words being used by Justice Breyer in there but I also think that plain air concepts don't even apply here I mean plain air is supposed to be you better well nobody's well I won't say that I didn't see the remedial interpretation of the Sentencing Act coming and and if you review the dissents you know I didn't either so I mean we truly have this isn't a okay you didn't argue a prende when you thought you knew what that meant and so therefore you didn't pursue Blakely this is a here's this error just floating around out there that just I mean it's not like you're in this funny disjunct that it's created in some of our cases which looks like if you don't raise an issue with the trial court there are two different ways to go one is plain air standard and maybe there's another one I don't think we've ever actually articulated that we've sort of mushed around in it but it looks like if one pays any attention to the rules there are two things there's harmless air if you raise it and there's plain air if you don't and you can call this other thing something else but it's really part of plain air it seems to me and I never saw a special rule for constitutional as opposed to non constitutional plain air I would yes I'm unfamiliar with it as well but another way we can try to get here under plain air is calling a structural and and you know that that would be I mean our Booker air versus a Blakely air but our Booker air is you were sentenced under a system where the judge thought he had to give you something and he didn't really have to and I mean I just believe this is just a systemic error and and again we have the case law talking about what defies harmless air review I mean it's when it's just structural to the system you don't know what they would have done and this is the you know the only evidence we have of what a district court without discretion did that's the only thing we know I mean that doesn't help us tell what a district court with district structural error wouldn't we have to send them all back and what is that how can that be reconciled with Justice Breyer's adventure on plain air and harmless air well I guess I'm still dividing it up into the Sixth Amendment where he's talking about plain air and so I would assume that preserved there is harmless unpreserved is playing as the Blakely Sixth Amendment so then I guess what we have is over into this let me let me restate my position is so we move over into the booker I'm calling it Fifth Amendment whether it's statutory you know again that doesn't I think that just matters for the standards we create here but I think that's where Justice Breyer specifically is using the term harmless air and but if you fail that it doesn't go back just everything doesn't go back if you fail that that's when this court reviews for so you're faced with this harmless air so yeah so second portion booker air you start with harmless air and if it fails that then you then you go down to the reasonableness now I understand we just wrap back around because harmless air it's been stated that the harmless air test is similar to the substantial rights portion of a of a plain air test so I guess we get back to we get back to is it the the good plain air test or the bad plain air test so I assume that you all weren't expecting to talk about this second sort of booker air here I did at least stick it into the brief and I have have asserted it to this day I mean all the issues are open still in the ninth in the Ninth Circuit because of the pending petitions for rehearing so I'm not sure where we'll come up but I take it your position is no matter what circuit you were in no matter what rule we adopted there should be a resentencing here yes that's my position and and and I will I'll say if co-counsel will agree with me on that I also want to briefly mention then is to even if why we shouldn't wait for amyling though is again even if amyling isn't is in bunk and it unless it just you know through dicta just having a broad brush as this is what we're going to do in every case amyling dealt with the middle of the guidelines person and so even if the plain air test goes from the good one to the bad one for mr. amyling that doesn't affect mr. Tyler nickel because he was at the bottom and I actually have a judge saying you know ten years is a long time and I don't want to give you a sentence that would increase your likelihood of being a hardened criminal so you know if amyling in bunk even if it changes the plain air standard then I'm you know a supplemental briefing time and I mean just quite frankly if this thing the law of the land the law of the Ninth Circuit land lets us go back today if this goes back and these guys get resentenced and later the full court says he shouldn't or the Supreme Court says he shouldn't this was not the worst thing that's ever happened in the world and in about two years it won't even be a historical footnote a little inconvenience and and we're done rather than this briefing upon you want it is your colleagues to have some time yes I will is anyone going to address the merit the issues of alleged prosecutorial misconduct or the jury instructions or you just want to rest on your briefing and talk about sentencing great okay thank you here I'll take 57 seconds if I might and talk about the vouching issue the improper witness vouching argument I think can be summed up in two points the role of the prosecutor and then how the prosecutor used the role of the court in vouching for the witnesses credibility in this case and in points at closing the prosecutor the prosecutor indicates he represents the people of the state of Idaho we've been doing this for 20 years that he had he and the and the appearance I think that inflate brings to the jurors attention the depth of experience that the prosecution had focusing then on the plea agreements where the witness after witness after witness it comes out the only thing that can get you in worse trouble is to lie to the court those the experience the line to the court and then the perception that these witnesses did in fact get the lenient treatment under the plea agreement leads to the improper vouchers in this case your honor. I would like to reserve the rest of the time for rebuttal unless the court has particular questions. Thank you. That's fine. Thank you. Good morning your honors. My name's Richard. I'm the United States attorney who handled this trial. I'm now on appeal. Let me address just quickly the Booker issue. One of the things that I attracted me to criminal law is the fact that in criminal law there seemed to be black and white rules upon which to rely upon. As it stands right now under Ameline 2 and the en banc potential en banc review is that unlike many places in the criminal law I kind of stand on quicksand trying to argue without knowing what the rules are. And I think that that Ameline 2 case will be extremely helpful in determining whether or not these people go back for sentencing or not. And I renew my request that the court I think counsel's suggestion that we just, oh well, let's just do it anyway. And if it turns out to be the wrong decision, well, it won't be a big deal. I think it is a huge deal, especially when defendants are, have committed these series of crimes and have received significant sentences. I think, your honors, that this case is different than Ameline 2 in that Ameline 2 there wasn't a jury trial. There's no extended hearings regarding quantities or other issues. There are no co-defendants. And this puts it in a different situation. As to plain error issue that I raised, and of course the department has raised, if you get this, if this boils down to whether the district court should be required to do this again to determine whether or not it's a reasonable sentence, I think it's extremely important for this panel to consider the great leaps, the lengths to which the district court went to give leniency to these defendants. I think that's important because I think it shows Judge Lodge went to great extent to give these people as much benefit of the doubt as possible. And that's most easily seen where the pre-sentence investigator first starts out with 8,000 pills a month for six months. He cuts that in half for no apparent reason other than to be, let's be fair and be very conservative. Judge Lodge then takes that amount after a three-week trial and 20-plus witnesses. And bless his heart, Judge Lodge is an awesome judge. But he is conservative in his findings. He takes that amount and goes, well, just to be ultra-conservative, I'm going to cut that 4,000 amount to 3,500. And instead of using six months or five months, I'm going to use four months. And I think the question is, why does that matter when we don't have a clue what the redoubtable Judge Lodge would have done had he known that he had discretion to sentence even lower if he felt like. He didn't have to. He knew he didn't. If he had known he didn't have to, you're not saying it, he didn't have to play, well, let's be nice guy games or, well, let's just make conservative estimates. He could just say, look, whatever your estimates are, I look at this case, I see what the guidelines seem to say, and I think these folks should either go down further or up further. If he had known he had that authority, how do we know what he would have done if he had known he had that authority and didn't have to go slicing things in half and saying, well, I'll assume it's four months and not six months and all those kinds of things? How do we know that? How can anybody know that sitting here today? There's the rub. How do you ever judge that? Under the current rules, it's almost an impossible standard for you to determine whether or not the judge would have or wouldn't have. That's our primary problem. Precisely. That's why maybe somebody should ask him. Well, if the Court finds that to be the case, I'm sure we'll get a chance to do that. I think in Mr. Rice's case, I think one bit of evidence that shows he wouldn't have gone further is he sentenced him not to the bottom end of the guidelines. As to the others, Mr. Nickel got 10, Mr. Pollack got something else. Again, I think, Your Honor, in responding to your question, you have to look at whatever's there to determine whether or not the district court was acting reasonably. The court would have been using the guidelines. There would be a guideline offense level. The court went to extraordinary lengths, in my opinion, to reduce, to reduce, to reduce, to find a very conservative amount. And I think that, if you need something that guides you as to where the court was going, the court went where he wanted to by determining the quantities and being extraordinarily cautious in terms of the... That almost argues against your position. In other words, if he weren't bound by the guidelines, he could have even gone lower. He wouldn't have to, as Judge Fernandez said, he wouldn't even have to justify going down to the bottom. He could just say, well, you know, I think in this case it's reasonable, reasonable to go below the guidelines. Yeah. That's the problem because... I mean, he's, you're saying he went down as far as he could, even though he believed that the guidelines were mandatory. He did. That's just the way he approached it in this particular case. Well, doesn't that tell you that if he thought they weren't mandatory, he might have gone lower? Judge, that's a question that the answer to is based upon 17 years of experience with Judge Lodge, and I can't. That's not in the record. I can't explain that.  I'm just taking Judge Lodge out of this particular thing. As a general matter, I mean, the Supreme Court has done what it's done with the law, and now we're supposed to apply it. But can it possibly make sense that in each case we're going to try to speculate what the judge would have done under a discretionary system? Wouldn't it be simpler just to send these cases back to the district courts and let them decide what they're going to decide under the new rules? Well, I don't think that's what the Supreme Court was suggesting when they decided Booker. Well, I understand what Justice Breyer said about plain error and harmless error, but how can we apply those concepts in a way that's strict, like the Eleventh Circuit does, I guess without just making assumptions that we really don't know anything about, about what the district court would have done? I suspect, Your Honor, that the answer may be in the error, even if plain, you still have to make a determination of whether it affected the defendant's substantial rights. And I think that the Court's analysis in bending over backward time and time again suggests the Court was reasonable and the defendants got all the benefit of the bargain, regardless of what the particular rules were at the time. Well, look, suppose, you know, for a moment, let's assume the defense counsel are honest. Excuse me, I didn't hear that. Let's assume the defense counsel are honest, straightforward, they understand the law. And there's a lot of evidence they don't try to put in front of the district court because they know that that's irrelevant under the mandatory guidelines. And maybe there's a whole lot of other stuff they'd like to say to the judge about why these are good guys. It would be irrelevant under the guidelines, but it's not irrelevant today. Your Honor, reading of the sentencing transcripts in this case, I think the panel could see the extraordinary lengths and the wonderful advocacy that these defense counsel gave to their clients, pulling out all the stops. I think that happened in this case. They are. It is wonderful, and we have looked at it. But they might have been even more wonderful if they could have put in more information yet that was just, for example, how about lack of youthful guidance from their parents. How's that for a shot? Yes, good one. Lack of youthful guidance. Not a ground for departure under the rigid guidelines, but maybe if you said, gosh, you know, this guy had such a hard time coming up, and, yeah, he made a mistake, he was a businessman, a self-made guy, he clawed his way to the top, and only his parents had given him more guidance than made him moral into the bargain, he might not have done it. I guess the same would hold true for us, Your Honor, having the benefit of the guidelines. There are things, well, actually, in fact, we did try to present more evidence, and the Court took an extraordinary step in denying us the right to add to the record on one issue that made a gigantic difference in the defendant's sentence. But you didn't appeal. No, sir, we didn't. Because at that time we didn't have all the problems we have now. There could be things that you might have argued to the sentencing judge under a discretionary system that you felt there's no sense arguing them under mandatory sentencing because they're not outside the heartland or, you know, under Coon, the Court can't pay attention to them. So the whole thing is quite a challenge, I guess, now. It is. Apart from this case, just in general. Well, a lot of defendants are rolling the dice, I think, when they want to go back because I suppose it's a two-way street if we vacate sentencing. That's true. The Court may consider things it didn't either otherwise. The Court may not be so conservative on the quantities. I don't know. All I know is that the Supreme Court doesn't seem to be too worried about taking these things one little piece at a time.  of appeal. They don't seem to be doing individual review of them. Yeah. I don't know the answer to that, Judge. We see in the beginning a lot of cases remanded where plain error or harmless error isn't discussed and sometimes where the appellants didn't raise sentencing issues. They're just cases on, you know, still on the direct appeal. I guess my, in summary of my argument, if the plain error standard is applied in this case and you use the substantial rights of the defendants being affected, the record as a whole suggests that this Court went beyond the norm to give these guys a conservatism. Okay. Well, we understand your position and it's well stated in the briefs and also the government's in general giving us a lot of advice about its view on amelie and on plain error. So I think we've got that. How about the merits issues? Yes, sir. To address the issues about vouching, which are basically raises a challenge to the whole conviction and the jury instructions issue. Yes, sir. As I stated in my brief, Your Honor, the whole issue of vouching has to be considered in the context of what this trial is about. Defense counsel started the trial in their opening statements, seriously challenging the witnesses in this case. And sadly, that escalated through the trial to the point that they are then challenging the government's proceeding in the case in bad faith. They're suggesting the government's proceeding in bad faith. They make reference after reference to, that suggests that the government is trying to tailor their testimony to what the government needs. And there are several egregious examples of that. And, Your Honor, I think just to get it down to the nitty-gritty, if you look at those instances, how they started the trial, how they cross-examined the witnesses, the issues they raised. For example, they submitted, they introduced each of my witnesses' plea agreements, which contained the lie detector issue, the polygraph issue. And yet they complain on appeal that I said something about the polygraph. I didn't put the plea agreements. I didn't raise the issue of a polygraph. I was just trying to correct what they insinuated through their questions, that somehow we were, the government was content to put these people on the stand, even though we knew they were lying and we didn't seek to test it or not by giving them a polygraph. That was the suggestion throughout the trial. And it got worse and worse towards the end. In closing, it got really ugly in terms of what was being suggested was the government's motives. This wasn't a trial about, well, these people are not telling the truth, and you know that because of this, this, and this. The defense literally became that this is one big conspiracy by the government and the witnesses to save all of them and make stuff up and not proceed in good faith. They didn't have a case, they claimed. We didn't have a case. We didn't have evidence. We suggested the witnesses collaborate with each other. And I think if you take that into context with the comments, those were clearly in direct response to the challenges the defense had put out, opening statements, cross-examination of previous witnesses, and there was none of those statements individually or collectively that rises to the level that causes a problem in this case, in my opinion. It's the same with the closing argument. It's basically the same issue. That's the open door policy, right? Exactly, Your Honor. Does the Court have any questions of any other of the issues? I think everyone's briefed this very well, and I don't have any. Thank you, Your Honor. I appreciate it. Okay. Thank you. Ms. Hampton. Your Honor, as to the vouching, this case was a circumstantial evidence case. The credibility of the witnesses was very important, and of course defense counsel attacked the credibility of the witnesses. Of course we challenged whether or not they had a motive to lie. You would expect no less. But to say then that the government gets to get up and present to the jury, you can believe these witnesses because if they lied, they would be in worse trouble than they are now. If they lied, the Court would not give them the benefit of the bargain. The inference that the prosecution wanted the jurors to draw is in this circumstantial case, you can rely upon us. Our experience, we've tested these witnesses. We know whether they're telling the truth or not. As to, if I could back up and go to somewhat the Booker issue and how do we know what the judge would do, we don't, quite frankly, know what Judge Lodge or any judge would do if they had the discretion to move the sentences to whoever they believe it was useful. Well that's, I forgot which circuit said it, but that's, the whole purpose of the plain error test is to apply, you know, that four-step analysis sort of objectively without trying to look into the mind of the individual judge to come to some conclusion whether or not the plain error test has been met. You can do that without looking at the motive or the musings of the individual judge, can you? I think you can look at the case to see whether it's a probability or how the judge is looking at the case as a whole. And in this case, yes, Judge Lodge did move down. He did make discretionary calls in some circumstances. But I think that goes more to where would the judge be if he did have discretion. Do you think there's a reasonable probability that Judge Lodge would sentence lower than he sentenced? I think there is. If he went back, and why? I think there is because if we went back and did have discretion of the court, defense counsel would be able to bring in some of these other factors that were not considered factors. Maybe we would bring in the community works of a defendant. Maybe we would bring in whether or not there was youthful, unguided youthful   the fact that the law is there, that's all. And Mr. Searle says, on the other hand, there are other factors he could bring in, too. Absolutely. Absolutely. And that is. That leaves you right where you are. That leaves us with the risk of balancing more factors. But that does not mean discretion. In other words, as I understand the plain error test, you have the burden to show, right, that your substantial rights have been affected. You can't just say, well, we don't know what he would have done. It doesn't meet the showing. We do know that Judge Lodge took into account the testimony. He didn't find it to be exactly where the government said. We do know that he didn't have much of the other types of personal information about the defendants because they weren't relevant at the time under a guideline sentencing. But that does show that Judge Lodge was open to discretion to move the sentences downward. And that would be a prejudicial impact. Thank you, Your Honor. I would like to address a clean slate issue also. This is a perfect standard of evidentiary standing, a standard on remand case, where not one of the 15,000 ecstasy tablets were found, nothing was recovered, everything was testimony of under the plea agreements, immunity agreements, you know, the guys with the tattoos on their tattoos and the strippers and junkies and all that. And I would suggest the sliding scale very briefly. If you're looking at a DEA report that weighed something on a scale, maybe preponderance is fine. Ameline left this open and all the old laws out the door. I say as you go into unreliability of the witnesses, we instruct the jury to scrutinize the testimony of people getting stuff for their testimony. Why don't we have the district court do it as well? We have circuit precedent, don't we, that says that the quantity determinations can be made by the judge under a preponderance of the evidence standard? Under pre-Booker law. I mean, the footnote 7 to Ameline was the we won't address what Booker did to this. But even under when the guidelines were saying the guidelines are advisory, part of the guidelines was preponderance. That's advisory now. There's nothing about Booker that says you can't have a heightened standard. And this Court and other courts carved out exceptions like the disparate impact, which I was arguing in my original briefing pre-Booker that that should at least apply clear and convincing. I say that's even more so now. And I don't think the precedent still applies. The guidelines don't. They're an advisory. And so I throw that out in my last seconds and we'll. We appreciate it. And we thank counsel for getting us tuned up for the Ameline and bank controversy. Thank you very much. We will take a brief recess for 15 minutes or so.
judges: Fernandez, Tashima, Gould